## Sacharow Estate

*William V. Cherry* and *Bernard Dallen*, for accountant.

*Kip D. Denega, Jr.*, for claimant.

*Mullen & Pazulski*, for legatee.

*Murray B. Dolfman*, for Commonwealth.

KLEIN, P. J., February 28, 1966.—Antonina Sacharow died on December 12, 1964, without issue, leaving a will which was admitted to probate on December 17, 1964, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

By her will, testatrix, after directing the payment out of her estate of all her debts, funeral expenses and taxes, devised and bequeathed the residue of her estate one fourth to her "former husband", Simeon Sacharow; one fourth to her nephew, Aleksander Duplicki (whose correct name appears to be Aleksander Mankowski); one fourth to her sister, Olga Duplitzky; and one fourth to her said sister, Olga Duplitzky, in trust for her mother, Maria Duplicka, a resident of Warsaw, Poland, "to transmit the trust fund to the beneficiary thereof periodically and in small parts and in the most advantageous manner, by money orders or in the form of packages with food or clothing, or other goods, as may be practical and desirable for her benefit, until

the whole of the trust fund should be used up and exhausted", with further provisions not necessary to recite.

All parties in interest are stated to have received notice of the audit.

By writing dated July 7, 1965, Simeon Sacharow alleged that he was the "widower" of testatrix, and elected to take against the will. As recited above, said Simeon Sacharow is described in the will as testatrix's "former husband." The will also appoints him executor.

The evidence produced at the audit revealed that Simeon Sacharow was married to Antonina Sacharow, decedent, in Munchen, Germany, on December 7, 1949. They emigrated to this country and lived as husband and wife in a common household at 156 East Mayland Street, Philadelphia.

In 1957, decedent commenced divorce proceedings against her husband in the Court of Common Pleas No. 2, June term 1957, no. 8254, alleging impotency and indignities to the person. A final decree in divorce a. v. m. was entered on November 15, 1957.

The record in the divorce proceeding indicates that the parties were living in the same house at 156 East Mayland Street when the suit was instituted. Simeon Sacharow remained at this address until decedent's death on December 12, 1964. Apparently, none of their relatives and friends knew of the divorce, and were all under the impression that Simeon and Antonina were husband and wife throughout the years they resided together on Mayland Street.

Decedent and her husband attended St. Vladimir's Russian Orthodox Church. Rev. Michael Nakonetschny, the priest at the church, who visited them at their home, heard decedent's confessions and administered the last rites to her, and testified that he and the

members of his congregation regarded the couple as husband and wife. Two other close friends of the couple testified that they and their friends always thought they were husband and wife.

Decedent died of a carcinoma, and in the many months of her terminal illness Simeon cared for her and their house as a husband normally would.

All of the circumstances attending the relationship of this couple strongly indicate that they regarded each other as husband and wife in spite of the divorce. They lived together continuously. He remained the beneficiary of her life insurance, and in 1961, four years after the divorce, she designated him as beneficiary under the employes' profit sharing agreement of the firm where she was employed.

It is clear that decedent's family regarded her as the wife of Simeon throughout the period in question. Olga Duplitzky, decedent's sister, who resides in Berlin, and who is entitled to one half of the estate (one fourth outright and one fourth in trust for her mother), submitted an affidavit dated February 2, 1965, in which she certified that decedent and Simeon Sacharow were married on December 7, 1949, and "until her death on 12/12/64 both of them lived as man and wife in own house in Philadelphia". Subsequent to decedent's death, her mother, Maria Duplicka, who resides in Poland, sent a letter addressed to Simeon Sacharow as son-in-law, unconditionally releasing her share of the estate to him.

Apparently, the principal objectant to the claim of Simeon Sacharow is decedent's nephew, Aleksander Duplicki, also known as Aleksander Mankowski, who gave evidence of not only being a selfish ingrate but also a very foolish young man. He came to this country on September 26, 1964, on a visitor's visa, and is employed at United Engineers & Contractors as a mechanical designer. In order to obtain his admittance

to the United States, Simeon and Antonina Sacharow jointly executed an affidavit guaranteeing that they would "receive and take care of our nephew, Aleksander Duplicki". The affidavit stated that it was made "for the purpose of inducing the United States Consular authorities to grant the visa to our said nephew . . ." In this affidavit, which was taken on March 5, 1964, the parties both swore that they were husband and wife, resided in the same household and were the "uncle and aunt" of Aleksander Duplicki. He came to live with the Sacharows and did not know of the divorce until after his aunt died.

If the statements in the affidavit made to the State Department were untrue, Aleksander would appear to be in this country by reason of a false affidavit and may be subject to deportation.

When summarized, the testimony clearly establishes that Antonina and Simeon were married in Germany in 1949; that they emigrated to the United States and lived together continuously as husband and wife at 156 East Mayland Street, Philadelphia, until she died; and that in 1957, while they were living in a common household, she obtained a divorce, which was kept secret from all of their friends, relatives and her spiritual advisor.

In the opinion of the auditing judge, this case is clearly and squarely controlled by Wagner Estate, 398 Pa. 531 (1960), in which a common-law remarriage was established, based on reputation and cohabitation, where the parties declared their divorce was a mistake, reunited and lived together for 10 more years. Mr. Justice Bok held that remarriage is sufficiently rare in human affairs to justify regarding it as sui generis, and said, at page 533:

"We are, however, not dealing with a first marriage but with a remarriage following divorce after twenty years of wedlock. In such a case we think that the

law's role of mere toleration of the common-law relationship should be reversed and the status of remarriage favored, even if acquired with common-law informality".

The circumstances in the present case are much more persuasive in favor of holding that a common-law remarriage existed, because in the Wagner case, at the time of the divorce, the parties entered into a contract surrendering their rights in each other's estates, and the parties were separated and living apart when the husband died.

The auditing judge, therefore, finds as a fact that Antonina Sacharow, decedent, and Simeon Sacharow, claimant, subsequent to the date of the entry of the decree in divorce in 1957, entered into a valid common-law remarriage, which subsisted until the date of her death. The objections to the election to take against the will are accordingly dismissed.

Credits are taken in the account for payment of the following items:

| | |
|---|---:|
| Peter S. Murianka, funeral ............. | $811.00 |
| Germantown Dispensary & Hospital, medical expenses ........................... | 96.10 |
| Dr. Barton R. Young, medical expenses .. | 70.00 |
| St. Vladimir Church, religious services, funeral .............................. | 150.00 |
| Germantown Dispensary & Hospital medical expenses ......................... | 444.40 |
| Simeon Sacharow, refund of amount paid Rova Farms re memorial dinners ........ | 27.00 |
| | $1,598.50 |

A husband is primarily liable for his wife's funeral expenses and expenses incident to her illness, although she has a separate estate. The wife's estate is secondarily liable, but such expenses will be deducted from the

husband's distributive share, if any: Waesch's Estate, 166 Pa. 204 (1895) ; Conn's Estate, 65 Pa. Superior Ct. 511 (1917). See also other cases cited in 3 Hunter's, O. C. (2d ed.) p. 185, §1(a). A direction in the wife's will that her funeral expenses and debts be paid relieves the husband from this liability: Melot's Estate, 231 Pa. 520 (1911). Such a direction is in relief of his legal liability and is, in effect, a legacy to him. If the husband, however, elects to take against his wife's will, the benefit of this exoneration is lost to him, and he is liable for the payment of his wife's medical expenses and funeral costs: Mitchell's Estate, 79 Pa. Superior Ct. 208 (1922) ; Sparo Estate, 8 Fiduc. Rep. 327 (1958). Although decedent's will directs her executor "to pay out of my estate all my just debts, funeral expenses and taxes", the election of Simeon Sacharow to take against the will makes him liable for his wife's medical and funeral expenses. Accordingly, the aforesaid credits are stricken from the account and are deductible from the share of Simeon Sacharow.

There was also a claim made at the audit by Mr. Denega, in behalf of the surviving husband, Simeon Sacharow, that Aleksander Duplicki, also known as Aleksander Mankowski, one of the legatees under the will, be required to repay to decedent's estate the sum of $488 alleged to have been advanced by her in order to assist him in coming to this country. The evidence submitted in support of this claim, however, was inconclusive as to whether it was a gift, a loan or an advancement. The claim is accordingly dismissed for insufficiency of proof.

Decedent's husband, Simeon Sacharow, claimed the family exemption of $1,000 and it will be so awarded . . .

And now, February 28, 1966, the account is confirmed nisi.